UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| **Elaiza Apan,** ) | COMPLAINT |
| ) | |
| **Plaintiff,** ) | Civil Action No. __3:25-cv-06032-MGL |
| ) | |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Experian Information Solutions, Inc.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## COMPLAINT

1. This is an action brought by the Plaintiff, Elaiza Apan, for actual, statutory, and punitive damages, attorney's fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq,* (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Columbia Division because the Plaintiff resides in Richland County and the Defendant transacted business in this division.

## PARTIES

9. The Plaintiff, Elaiza Apan, is a resident and citizen of the State of South Carolina, Richland County, and is over the age of twenty-one (21) years.

10. Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant Experian may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court Suite 103, Columbia, SC 29223. Defendant Experian was in all respects and at all times relevant herein doing business in the state of South Carolina.

11.     Defendant Experian is a credit reporting agency as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.

12.     Defendant Experian's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires the Defendant to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

13.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, mixed the Plaintiff's credit file with that of another consumer, and/or completely removed Plaintiff's credit file, replacing hers with another individual and reporting said other individual's credit as belonging to Plaintiff.

## FACTUAL ALLEGATIONS

14.     In early 2023, Plaintiff was in the market to purchase a home in order to either use it as a rental home for extra income or to possibly flip and sell for a profit.  Plaintiff found

a home at a great price through a private seller and decided to purchase the home.

15. In February 2023, Plaintiff went to Navy Federal Credit Union and applied for a mortgage loan.

16. On April 4, 2023, Navy Federal Credit Union denied Plaintiff's mortgage loan application. The principal reason given to Plaintiff for the denial of the mortgage application was "[d]elinquent past or present credit obligations" appearing on her Experian, TransUnion, and Equifax credit reports.

17. Plaintiff was shocked to be denied the loan because at the time of the denial, Plaintiff did not have any delinquent accounts.

18. Thereafter, Plaintiff went online to obtain a copy of her Experian credit report. Plaintiff tried several times to create a profile so she could access her credit report on the Experian website, but each time she was denied access because her personal identifying information did not match what was on her credit report.

19. Eventually, Plaintiff was able to contact Defendant by phone and a representative helped Plaintiff create an online account. Thereafter, Plaintiff was able to view her Experian credit report and discovered that her sister's name, birth year, and social security number were all reporting on Plaintiff's credit report. Additionally, there were numerous accounts that were reporting on her credit report, including two derogatory accounts, that did not belong to her.

20. Plaintiff immediately filed an online dispute with Defendant setting out all of the information that was incorrect on her credit report.

21.   After filing the online dispute, Plaintiff fully expected her credit Experian report would be corrected. Accordingly, she continued to contact Navy Federal Credit Union and another home loan company for the purpose of having them check her credit to see if she was finally eligible to obtain the mortgage loan.

22.   On or about March 28, 2023, Navy Federal Credit Union again did a hard inquiry of Plaintiff's Experian credit file to see if she would qualify for the mortgage.

23.   On or about April 13, 2023, Clear Mortgage Corp did a hard inquiry of Plaintiff's Experian credit file.

24.   Plaintiff was denied a mortgage by Navy Federal Credit Union and Clear Mortgage Corp.

25.   On April 16, 2023, Plaintiff was provided an updated copy of her Experian credit report which continued to include Plaintiff's sister's name, Glaiza Smith Massini, and multiple accounts that did not belong to Plaintiff, including both derogatory accounts.

26.   Following receipt of this report, Plaintiff did another online dispute with Defendant.

27.   On or about April 28, 2023, Plaintiff obtained a new copy of her Experian credit report and it continued to report Plaintiff's sister's name as belonging to Plaintiff. It also continued to report numerous accounts that did not belong to Plaintiff, including one derogatory account.

28.   Plaintiff again disputed all of the inaccurate information with Defendant so that her credit report would be corrected.

29.   On July 12, 2023, despite numerous disputes by Plaintiff to Defendant, Plaintiff's

Experian credit report continued to contain an incorrect name as belonging to Plaintiff. Specifically, Defendant was reporting Plaintiff's sister's name as an "also known by." That was absolutely not correct. Plaintiff never used the name Glaiza Smith. This report also continued to report multiple credit card accounts as belonging to Plaintiff when Plaintiff had none.

30.     On or about August 30, 2023, Plaintiff attempted to access her Experian credit report online but when she logged on it gave her a message stating "Sorry, we can't show you today's report. This might mean that your lenders have different personal info for you than we do. Until this issue is resolved, you won't be able to see your report."

31.     Plaintiff again contacted Defendant as was provided a copy of her August 30, 2023, Experian credit report which continued to have Plaintiff mixed with her sister.

32.     As a result of Defendant's failure to correct Plaintiff's credit reports, Plaintiff simply succumb to the belief that Defendant would never correct her credit report and gave up on the idea of ever being able to buy a home or, eventually, even a car.

33.     Since Plaintiff was not able to purchase the home she desired, Plaintiff was forced to acquire a storage unit in order to store her personal belongings as she had no place to store them without the home she was hoping to buy. Plaintiff also had to reluctantly sell her 6x20 enclosed trailer, which she really wanted to keep but could not afford to continue storing it indefinitely, when she was unable to buy the home she wanted.

34.     In March 2024, Plaintiff, who does not own or use credit cards, had the idea that maybe getting a credit card would increase her credit score thereby allowing her to get a

home loan. Accordingly, Plaintiff applied for a credit card through Navy Federal Credit Union. Navy Federal Credit Union viewed Plaintiff's Experian credit report on march 15, 2024 and denied her application.

35.  On or about May 20, 2024, Plaintiff received a copy of her Experian credit report by mail. This report showed that Plaintiff's credit score had dropped from 721 to 664. It also showed that Defendant was continuing to mix Plaintiff with her sister. Specifically, Defendant was reporting two name variations that belonged to Plaintiff's sister, her sister's year of birth, the last four numbers of her sister's Social Security number, and an address at which Plaintiff has never lived. Defendant was also reporting multiple accounts that did not belong to Plaintiff, including a collection account with Jefferson Capital System for $3,024.

36.  On or about October 26, 2024, Plaintiff mailed, via certified mail, a dispute letter to Defendant ("First Dispute Letter"), wherein Plaintiff stated she had obtained a copy of her Experian credit report, and it contained several items and accounts that were incorrect. Specifically, Jefferson Capital Systems, Cap1/WSI, three Capital One accounts, ADS/Comenity/Ikeavc, and Syncb/Banana Rep accounts were not Plaintiff's accounts. Plaintiff also provided the correct last four digits of her social, the correct year of her date of birth, and that Glaiza Smith Massini and Glaiza Apan were names belonging to her sister. Plaintiff also requested the address of 100 Linda Circle, Enterprise, AL 36330-3226 be removed as Plaintiff had never lived at that address. Plaintiff asked that her credit report be fixed immediately as she had already been denied a mortgage. Plaintiff also enclosed a

copy of her driver's license to prove her identity.

37.     Defendant received Plaintiff's First Dispute letter on October 29, 2024.

38.     On or about November 8, 2024, Plaintiff received the results of Defendant's alleged reinvestigation into her dispute. Defendant's results showed that a Navy Federal Credit Union account and the Jefferson Capital Systems collection account had been deleted. Defendant also stated that it had corrected Plaintiff's names, year of birth and social security number.  However, all of the other disputed accounts remained.  Additionally, the disputed address in Enterprise Alabama also remained.

39.     On or about November 8, 2024, Plaintiff received a second dispute results from Defendant.  This report did not set out what, if any, changes had been made to Plaintiff's Experian credit report.  Upon review of these results, Plaintiff discovered that the disputed credit cards accounts continued to be reported as belonging to her.  Additionally, the disputed address in Enterprise Alabama also remained.

40.     On or about November 8, 2024, Plaintiff received a third dispute results from Defendant.  This report stated "Our reinvestigation of the dispute(s) and/or other request(s) you recently submitted is now complete.  If an item you disputed is not on the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation."  Nothing was listed below.  However, upon review of the report, Plaintiff discovered that the Jefferson Capital Systems collection account was again reporting on her credit report, as were all of the previously disputed accounts. Additionally, Plaintiff's sister's names, year of birth and social security number had all been

put back on in place of Plaintiff's correct information. Finally, the disputed address remained.

41. On or about November 8, 2024, Defendant also forwarded Plaintiff a copy of her credit report. While the Plaintiff's names, year of birth and social security number appeared to have been corrected, the report continued to include the disputed accounts, less the Jefferson Capital collection account, and the incorrect address.

42. On or about December 16, 2024, Plaintiff mailed a second dispute letter to Defendant ("Second Dispute Letter"). In this letter, Plaintiff stated she had received the results from Experian, but her credit report continued to report accounts that did not belong to her, to-wit: Cap1/WSI, three Capital One accounts, ADS/Comenity/Ikeavc, and Syncb/Banana Rep. Plaintiff also disputed the 100 Linda Circle, Enterprise, Alabama address because she had never lived at that address. Plaintiff again enclosed a copy of her driver's license, and provided her date of birth, address, and Social Security number so Defendant would fix her credit report.

43. Defendant received Plaintiff's Second Dispute Letter on December 30, 2024.

44. On or about January 9, 2025, Defendant sent Plaintiff the results of its reinvestigation into her Second Dispute. The Comenity Capital/Ikeavc, Cap1/WSI, and the three Capital One accounts were all finally deleted from Plaintiff's credit report, but the Syncb/Banana Rep account was verified as accurate and thus remained. The incorrect address was also finally removed.

45. On or about March 11, 2025, Plaintiff sent a third dispute to Defendant via certified

mail ("Third Dispute Letter"), wherein Plaintiff stated she had received Defendant's results, and her credit report was still reporting the Syncb/Banana Rep account that did not belong to her. Plaintiff requested that Defendant remove this account so that Plaintiff's Experian credit report would finally be correct.

46. Defendant received Plaintiff's Third Dispute on March 18, 2025.

47. To date, Defendant never responded to Plaintiff's Third Dispute Letter.

48. As of the date of the filing of this Complaint, Defendant continues to report false inaccurate credit reports on the Plaintiff to third parties which has harmed Plaintiff's reputation and caused her damages.

## COUNT ONE
## FCRA - 15 U.S.C. §1681n

49. The Plaintiff adopts the averments and allegations of paragraphs 14 through 48 hereinbefore as if fully set forth herein.

50. Defendant maintains and distributes credit data files on the Plaintiff's credit.

51. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; (c) providing Plaintiff's credit file to companies without determining that these companies had a permissible purpose to obtain Plaintiff's credit file pursuant to 15 U.S.C. §1681b; and (d) failing to provide Plaintiff her credit file pursuant to 15 U.S.C. §1681g.

10

52. The Plaintiff further alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

53. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, the Plaintiff is entitled to statutory damages.

54. As a result of Defendant's violations of the FCRA, the Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of a mortgage, denial of credit, lost opportunities to receive credit, damage to reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, frustration, embarrassment, loss of enjoyment of life, lost time spent working to correct her credit report, and humiliation. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

55. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

56. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

57. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

## COUNT TWO
## FCRA 15 U.S.C. §1681o

58. The Plaintiff adopts the averments and allegations of paragraphs 14 through 57 hereinbefore as if fully set forth herein.

59. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow

reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; (c) providing Plaintiff's credit file to companies without determining that these companies had a permissible purpose to obtain Plaintiff's credit file pursuant to 15 U.S.C. §1681b; and (d) failing to provide Plaintiff her credit file pursuant to 15 U.S.C. §1681g.

60. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

61. As a result of Defendant's violations of the FCRA, the Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of a mortgage, denial of credit, lost opportunities to receive credit, damage to reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, frustration, embarrassment, loss of enjoyment of life, lost time spent working to correct her credit report, and humiliation. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

62. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

63. Plaintiff is entitled to her attorney fees, pursuant to 15 U.S.C. §1681n(a).

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C.

§1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

    B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

    C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

    D.    For such other and further relief as the Court may deem just and proper.

/s/ *Penny Hays Cauley*
Penny Hays Cauley, Fed ID #10323
**HAYS CAULEY, P.C.**
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ *Penny Hays Cauley*
Penny Hays Cauley

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Experian Information Solutions, Inc.
c/o – C T Corporation System - Registered Agent
2 Office Park Court, Suite 103
Columbia, SC 29223